UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

RONDELL ELLIS,

Defendant.

REPORT & RECOMMENDATION

20-CR-6116-CJS-MJP

---

**Pedersen, M.J.** On January 26, 2021, the Court held oral argument on Defendant's motion to suppress evidence (ECF No. 24). The Court determined that it needed additional briefing on the issue of the stop of the Defendant by the police officers. The parties have further briefed the topics at issue, and Defendant has provided an affidavit (Def.'s Suppl. Submission to Mot. to Suppress Evid., ECF No. 34). The issues before the Court are whether the police stop constituted a *Terry*[1] stop, and if there is now a genuine material issue of fact. For the reasons set forth below, the undersigned determines that the police stop in this case did not constitute a *Terry* stop, and there are no issues of fact requiring a hearing. Accordingly, the undersigned recommends that Defendant's motion to suppress be denied.

## BACKGROUND

Defendant's counsel's affidavit states the following with regard to Defendant's arrest:

> On July 31, 2020, Rochester Police Department Investigators Thomas Luciano and Aaron Wilcox were assigned to the area of North Clinton Avenue and Kohlman Street to monitor the activities of a group of males

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

in the area. Investigators Luciano and Wilcox were in the area in an unmarked police vehicle in a plain-clothes capacity.

Investigators Luciano and Wilcox were monitoring the group, in the area of 36 Kohlman Street, for approximately twenty (20) minutes. During their surveillance, they observed a male with medium length dreadlocks that were partially dyed blonde, wearing a white t-shirt, and light colored jeans, go into the backyard of 36 Kohlman Street and return carrying a small handbag that he placed over his shoulder. The male was later identified as Ellis.

Ellis then mounted a bicycle and road toward the investigators while they sat in an unmarked vehicle. Ellis approached the driver's side of the vehicle and stated "who you looking for?" Investigator Wilcox then identified himself as a police officer, at which time Ellis rode his bicycle away from the officers. Investigators followed Ellis and observed him fall off the bicycle and proceed on foot. Investigator Luciano pursued Ellis, on foot northbound through the yards towards Burbank Street. He observed Ellis running up the driveway of 16 Burbank Street during which time he stated he observed Ellis attempt to remove the bag from his shoulder. Ellis ran behind 16 Burbank Street where Investigator Luciano lost sight of him.

Investigator Luciano located Ellis hiding behind a vehicle in the driveway of 12 Burbank Street and arrested him. When Ellis was detained, Investigators observed that he was no longer in possession of the handbag. Investigator Luciano relayed his observations and described the handbag to other responding officers. Luciano requested that officers search the area of 16 Burbank Street, where he said he saw Ellis trying to remove the bag from his shoulder.

Officers responded to the area of 16 Burbank Street and located a similar handbag in the garbage tote behind that house. Investigator Luciano responded to 16 Burbank Street and believed the bag located in the garbage tote was in fact the same handbag that he observed in Ellis's possession. Investigator Luciano then opened the bag and observed a small black revolver inside. Rochester Police Department technicians responded to the area to photograph and collect the firearm. An RPD technician then examined the firearm and determined it was a .38 Special caliber, Charter Arms Off-Duty double action revolver with an obliterated serial number and five rounds of ammunition.

> Ellis was then taken to the Rochester Public Safety Building, where he was read his *Miranda*[2] rights and gave short, recorded statement. In the statement, he stated that he possessed the bag in question. He was asked further questions before he requested a lawyer and the interview was ended and he was booked into the Monroe County Jail.

(Slawinski Aff. at 3–6, Dec. 17, 2021, ECF No. 24.) Defendant supplemented his motion papers regarding the police stop and included an affidavit signed by Defendant in which he stated as follows:

> I Rondell Ellis is [sic] duly sworn deposes and say: that on July 31, 2020, around "4 or 5:00 PM" i [sic] was on my way to kelp my sister a few streets over, because She ran out of gas. So at the time of me leaving My homeboy's house, I went to the back of the yard of 36 Kohlman St to retrieve my belongings Which was a brown bag with gray and white triming Which held inside the following contents (1) Bluetooth SPeaker, (2) myPhone charger and a Bottle Water. I then hopped on my bike and my friend told me Yo bro my girls Should be in a red car out front tell her i [sic] said come inside. So as i [sic] approached the red car on my bike I didn't See his girlfriend in the car so that's when i [sic] asked Who You guys looking for and at that time their response was "Who we looking for" Were [sic] the Police, then i [sic] said OK. I then rode away on my bike, While riding away my chain Popped and got tangled up in the Wheel forcing me to fall of my bike as i [sic] was getting to my feet i [sic] heard someone lavshing [sic][.] So When i turned to look i [sic] seen [sic] the Police officer running in my directions and my first instink [sic] was to run cause i [sic] was scared anyways i [sic] ran as fast as i [sic] could towards [B]urbank Street trying to get Closer to the street my sister was on however during that time running and Hopping fences the bag I had on was interfering with my stride. So When i [sic] ran Up the driveway towards the back of the house on [B]urbank St i [sic] removed the bag from around my shoulder and flung it as far as i [sic] could towards some bushes and continued to run after a few more fences i got tired and hid behind a car in another drive way on [B]urbank St at that moment I was so scared for my life and i [sic] didn't Know What the officer Were gonna do to me the only thing that came to my mind was were the officers going to shoot me, beat me or the Worse Kill me. [I]t's been so Many african [sic] americans [sic] innocently getting Killed by Police officers that's why i [sic] ran. a few Moments later I heard commotion coming towards me then i was handcuffed, and transported

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

> to Public Safety buildings Were [sic] the officers read me my Rights i [sic] told them what happened once the officers asked me did i [sic] have a brown bag i [sic] said "Yes" then the officers Said there was a gun in the bag that i [sic] flung with my Bluetooth speakers, Phone, Charger, and a bottle warter [sic]. [I]t's Strange how [I']m getting chased for asking a simple question then all of a sudden a gun appears in a brown bag that's not the bag i [sic] had on that's not mine.

(Ellis Aff. at 1–2, *attached as* Ex. A to Slawinski Aff., Feb. 5, 2021, ECF No. 34.)

In its first response to Defendant's original motion to suppress, the government contends that during their surveillance, Investigators Luciano and Wilcox,

> saw a group of males conducting what appeared to be several hand to hand drug transactions near 36 Kohlman Street. After approximately 20 minutes, Investigator Luciano observed a male, later identified as the defendant, go into the backyard of 36 Kohlman Street and return carrying a small bag that he placed over his shoulder.

(Gov't Resp. at 1, Jan. 4, 2021, ECF No. 25.) From that point on, the government's rendition is similar to defense counsel's, except that the government relates that once Defendant was read his *Miranda* rights and told that a gun was in the bag, "he stopped talking." The government's narrative does not indicate that Defendant claimed the bag found by police was his.

Defendant argues that

> In Ellis' case, there was no reason for the police to arrest him. He was not observed by them committing any crime, he simply rode his bike up to the police vehicle, then rode away when he discovered who they were. There has been no subjective intent provided in the complaint or discovery for the officers to effectuate a warrantless arrest in this case.

(Slawinski Aff. at 5–6, ECF No. 24.) In his supplemental affidavit, Mr. Slawinksi argues that the police had no basis to chase him, no basis to arrest him, and relies on *Terry v. Ohio*, 392 U.S. 1 (1968), in support of his contentions.

The government opposes both suppression and a hearing, arguing that Defendant never supplied an affidavit showing any of his rights were violated.[3] Further, the government argues that Defendant abandoned the bag containing the firearm before he was apprehended.

## ANALYSIS

An evidentiary hearing is required "if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact [exist]." *United States v. Guzock*, 998 F. Supp. 2d 102, 109 (W.D.N.Y. 2014) *citing United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005). "[T]he Court has discretion to deny a hearing … where the defendant's papers fail to create a dispute over material fact." *Guzock*, 998 F. Supp. 2d at 109 *citing United States v. Carter*, No. 11–CR–121–A, 2012 WL 4721117, 2 (W.D.N.Y. Sept. 11, 2012).

### *Suppression of the gun and any items found in discarded bag*

In his affidavit, Defendant admits that he approached the police "without provocation," that he left the police, and that he was taken into custody on Burbank Street after discarding a bag he had been carrying over his shoulder. (Def.'s Suppl. Submission to Mot. to Suppress Evid. at 5–6, ECF No. 34.) Defendant states that the bag the police found is not his.[4] Because Defendant has denied that the bag was his, he does not have standing to suppress it.

---

[3] Defendant later supplemented his motion papers with an affidavit from his personal knowledge.

[4] Although defense counsel, in his affirmation, said that Defendant "stated that he possessed the *bag in question*," (Slawinski Aff. at 4–5, ECF No. 24), Defendant himself has refuted that statement by claiming that the bag the police retrieved was not his. Because defense counsel has not alleged that he had personal knowledge about what Defendant told

Moreover, even if it had been his bag that the police retrieved, "[i]t is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have had in that property." *United States v. Soto-Beniquez*, 356 F.3d 1, 36 (1st Cir. 2003); *see also United States v. Faust*, 853 F.3d 39, 47 n.5 (1st Cir. 2017) ("the officers recovered the backpack containing the gun and ammunition after Faust discarded it and before he was apprehended. Thus, Faust abandoned any expectation of privacy in the backpack, the recovery of which did not constitute a wrongful seizure."); *United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990) ("When a person voluntarily abandons property, however, he forfeits any reasonable expectation of privacy that he might have had in the property."); *United States v. Clark*, 822 F. Supp. 990, 1011 (W.D.N.Y. 1993) ("Additionally, while an abandonment must be voluntary, 'the existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary.' *See*, *United States v. Morgan,* 936 F.2d 1561 (10th Cir. 1991) (quoting, *United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir. 1983)). *See also*, *United States v. Koessel,* 706 F.2d 271 (8th Cir. 1983) (where drug enforcement agents approached defendant in his car and defendant opened door and threw down packet later found to contain cocaine, the court held that the defendant had abandoned the property and had no Fourth Amendment interest in the packet).").

---

police during questioning, and Defendant does, the Court credits Defendant's rendition that he denied that the bag the police retrieved was his.

Defendant argued that the police pursuit and subsequent seizure of his person was the equivalent of a *Terry* stop. In *Terry*, the Supreme Court approved of an investigative seizure short of arrest based on a police officer's ability to express "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" an "'intrusion upon the constitutionally protected interests of the private citizen.'" *Terry v. Ohio*, 392 U.S. 1, 21 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 534–35 (1967)). Here, Defendant relates that after he fell from his bike, he observed a police officer "running in my direction." (Ellis Aff. at 1.) Defendant then began to run away from the officer. (*Id.*) In order to constitute a seizure, one of two conditions are required: (1) an individual succumbs to a show of police authority, or (2) the police stop that induvial through application of physical force. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Neither occurred until after Defendant had discarded the bag with the gun and other items. Consequently, the undersigned does not find that neither Defendant nor his bag was seized as the result of a *Terry* stop. The mere act of the officers exiting their car did not amount to a *Terry* stop and Defendant's decision to flee on his bike, and on foot after the bike chain stopped him from using the bike, did not amount to a seizure. Further, as the late Chief Rehnquist observed in *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000): "Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Defendant's unprovoked flight in reaction to the officer having identified himself as a police officer, in a neighborhood where drug trafficking was being observed by the officers, justified the pursuit, and during that

pursuit, an officer observed Defendant discard a bag, which was eventually found to contain a firearm with a defaced serial number. (Gov't's Resp. at 2.)

For the reasons set forth above, Defendant's motion to suppress the gun and anything else found in the bag retrieved by the police should be denied.

### *Suppression of statements*

Defense counsel posits in his papers that Defendant "gave [a] short, recorded statement . . . that he possessed the bag in question." (Slawinski Aff. at 4–5.) He then requested counsel and the interview was ended. (*Id.* at 5.) He moves to suppress that statement as the fruit of an unconstitutional arrest, arguing that the police had no probable cause at the time they took Defendant into custody.

Based on the authorities discussed above, it was reasonable for the police to pursue Defendant and seize him while they investigated the bag he had discarded. Once they found the defaced firearm in the bag, they had probable cause to arrest Defendant. Defendant acknowledged that the police read him his rights (Ellis Aff. at 2), and concedes that he told officers he had a bag, but now disputes that the bag officers found was his. Nothing in the papers before the Court points to a factual dispute requiring a hearing to resolve and nothing in the papers shows any violation of Defendant's constitutional rights with regard to his statement.

Accordingly, the undersigned recommends that Defendant's motion to suppress his statements be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED:   March 9, 2021
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge